No. 22342.

RUTH E. MYERS AND INDUSTRIAL COMMISSION OF COLORADO *v.* STATE OF COLORADO AND STATE COMPENSATION INSURANCE FUND.

(428 P.2d 83)

Decided May 1, 1967. Opinion modified and as modified petition for rehearing denied June 19, 1967.

John S. Carroll, for plaintiff in error Ruth E. Myers.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Peter L. Dye, Assistant, for plaintiff in error Industrial Commission of Colorado.

Harold Clark Thompson, Alious Rockett, Francis L. Bury, Feay Burton Smith, Jr., for defendants in error State of Colorado, Employer, and State Compensation Insurance Fund, Insurer.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

Glen Myers was employed by the State of Colorado as a yardman at the State Home and Training School. On November 6, 1963 Myers sustained an accidental injury to his hip and leg, the accident admittedly arising out of and in the course of his employment.

Claim was then made for workmen's compensation benefits. On January 18, 1965 a referee for the Industrial Commission ordered that Myers receive compensation

at the rate of $43.75 per week, until the sum of $11,376 was paid to him, for and on account of his permanent partial disability.

On or about April 21, 1965 the Public Employees' Retirement Association of Colorado, hereinafter referred to as PERA, granted Myers a disability annuity in the amount of $160.79 per month, effective January 6, 1965. This disability annuity also stemmed from the injuries sustained by Myers in the aforementioned accident occurring on November 6, 1963.

Immediately thereafter, the State Compensation Insurance Fund, pursuant to C.R.S. 1963, 81-12-1(5)(a) and (b), asked the Industrial Commission to reduce the monthly workmen's compensation benefits due Myers in an amount equal to one-half the monthly disability annuity theretofore granted Myers by the PERA. In other words, the Fund asked that the monthly compensation benefit be reduced in the amount of $80.40.

The Industrial Commission denied the request of the Fund for a reduction in compensation benefits, and ordered that the Fund continue to pay benefits at the rate of $43.75 per week, with such weekly payments to continue till Myers was paid a total of $11,376.

In due time the Fund sought and obtained judicial review of this particular matter. The trial court, after hearing, set aside the award of the Commission and held that the monthly compensation benefits to Myers should be reduced in an amount proportional "to the employer's percentage of total contributions to the Employees Pension Plan." By writ of error Ruth E. Myers, the widow of Glen Myers, and the Industrial Commission now seek reversal of the judgment thus entered.

■ The narrow issue here to be resolved is whether C.R.S. 1963, 81-12-1(5)(a) and (b) applies to a PERA disability annuity. We hold that it does. The statute with which we are here concerned reads as follows:

"5(a) In cases where it is determined that periodic disability benefits are payable to an employee under

the provisions of a pension plan financed in whole or in part by the employer, hereinafter called 'employer pension plan,' the weekly benefits payable pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly as practical to such employer pension plan benefits, with the following limitations:

"(b) Where the employee has contributed to the employer pension plan, weekly benefits will be reduced under this section only in an amount proportional to the employer's percentage of total contributions to the employer pension plan"; . . . .

It is initially argued that C.R.S. 1963, 81-12-1 (5) (a) and (b) is simply not broad enough to encompass a PERA disability annuity. This particular argument is presented to us in several variations. For example, it is said that the aforementioned statute does not apply to *state* employees; that the statute is limited to *private* pension plans; that the statute applies to *temporary* disability benefits, and not to *permanent* disability awards; and that the statute relates only to *pensions,* and not to *annuities.*

█ In this general regard it is argued that for us to hold that a PERA disability annuity is included within the aforementioned statute would constitute judicial legislation. With this line of reasoning we do not agree. On the contrary, we are of the firm view that for us to *except* PERA disability annuities from the effect of this statute would itself amount to judicial legislation, and of a rather obvious variety. The judiciary would then be creating an exception which the legislature did not see fit to create. This we should not do. *Estate of Bourquin,* 84 Colo. 275, 269 Pac 903.

█ The statute with which we are here concerned provides that when periodic disability benefits are payable to an employee under the provisions of a pension plan financed in whole or in part by the employer, then the "weekly benefits payable" under workmen's compensation shall be reduced, with the reduction formula

then being spelled out in the statute. It is at once apparent, then, that by its very terms the statute is *not* limited to *private* employees, as opposed to *state* employees; nor is it restricted to *private* pension plans. Furthermore, its application is not confined to *temporary* disability benefits, as opposed to a *permanent* disability award.

■ It should be noted that the statutory definitions of "employees" and "employer" are such as to quite definitely include employees of the state. C.R.S. 1963, 81-2-7 and C.R.S. 1963, 81-2-6(1). So, when the statute uses the word "employee," the General Assembly meant to include employees of the state, as well as so-called "private" employees.

■ Nor do we feel it necessary to get into a semantics battle concerning the difference between "pension" and an "annuity." There is a difference, of course. But it is hard to believe that the General Assembly intended to except disability payments under PERA on the basis that such was an annuity, and not a pension. The General Assembly used the phrase "pension plan" in the broad, generic sense, and if there are to be exceptions, these will have to be provided for in a clear and unmistakable manner.

■■ Actually, then, the precise issue to be resolved is just what interpretation should be given 81-12-1(5)(a) and (b). We choose not to give it the rather narrow and limited interpretation suggested by our dissenting brethren, as to do so would in our view thwart the legislative intent. To us, at least, it is rather obvious that the General Assembly intended to require a reduction in the workmen's compensation benefits otherwise payable to an injured employee where the employer, who has himself already paid the cost of workmen's compensation insurance, has also purchased, in whole or in part, a disability pension or annuity plan for his employee. The General Assembly was of the view that an injured employee should not be permitted

to receive so-called "double" disability benefits, *i.e.* both workmen's compensation benefits and disability annuity at the expense of the employer. See in this regard, *City of Los Angeles v. Industrial Commission,* 63 Cal. 2d 242, 404 P.2d 801, 46 Cal. Rptr. 97.

Suggestion is also made that this controversy should be governed by the statutes creating PERA. In this regard it is quite true the General Assembly in 1931 did declare that PERA annuities should be "in addition to any benefits accruing to a state employee under the workmen's compensation act." This does not mean, however, that the General Assembly is thereafter powerless to reduce workmen's compensation benefits to reflect that portion of the PERA disability annuity which has been financed and paid for by the employer.

█ Finally, it is contended that C.R.S. 1963, 81-12-1-(5)(a) and (b) is unconstitutional. We do not perceive any constitutional infirmity in this statute. Workmen's compensation benefits are fixed by statute, and the statute not only creates, but measures, the benefits to be thus received.

█ It is to be noted that we are not here concerned with the "wisdom" of the legislative pronouncement under consideration. There could be, and undoubtedly was, a considerable difference of opinion within the General Assembly as to whether this reduction in workmen's compensation benefits was "sound" from the sociological and economic point of view. But this is a matter to be determined by the legislature, not the judiciary, and the General Assembly has now resolved that dispute. The only concern of the judiciary in this circumstance, then, is to determine whether these legislative efforts in anywise offend the basic law of the land. We hold that the various provisions of C.R.S. 1963, 81-12-1(5)(a) and (b) do not impinge on any of the rights guaranteed by either the state or federal constitution.

█ Finally, it should be emphasized that we are

here only concerned with whether there should be a reduction in the weekly workmen's compensation benefits because of the granting of a PERA disability annuity. Our holding that there should be a reduction in the *weekly* compensation benefits is not to be considered as any authority for a proportionate reduction in the aggregate total of workmen's compensation benefits due the injured employee, or, in this case, due the injured employee's widow. The contention that the aggregate total of workmen's compensation benefits should also be reduced in the same proportion as the weekly compensation benefits was considered, and rejected, by us in *Industrial Commission v. Rowe*, 162 Colo. 248, 425 P.2d 274.

As we understand the judgment heretofore entered by the trial court, *only* the weekly benefits were ordered to be reduced because of the PERA disability annuity paid Myers, and the trial court, insofar as we are advised, did not make any order whatsoever concerning the aggregate total amount of compensation benefits due Myers' widow. Furthermore, our examination of the record discloses that, after making certain deductions for benefits already paid Myers, the Commission declared that the "new balance" still due Myers was $4,655.20, "depending upon the order of court." Our holding in the instant case is, then, that only the weekly benefits due Myers' widow, are to be reduced as above indicated, and in so holding we are *not* decreeing or in anywise suggesting that there should also be a proportionate reduction in the total amount of compensation benefits still due and owing Myers' widow.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE DAY dissents:

I dissent.
Methinks the majority doth protest too much in dis-

avowing that it is engaging in judicial legislation. That, in my opinion, is exactly what has been done by my brethren on the court.

The majority opinion has inordinately construed the words "periodic disability benefits" — words of not so broad a connotation — and has literally stretched them to such a degree as to blanket in a class of *retired* persons who I believe should not be included. There is no sound reason to do so, and the result does not comport with the long standing rule that the Workmen's Compensation Act should be liberally construed. California has stated it another way, which, I believe, is apropos here: "* * * where provisions are susceptible of an interpretation either beneficial or detrimental to an injured employee, they must be construed favorably to the employee. [citations.]" *Colonial Ins. Co. v. Industrial Accident Commission*, 27 Cal. 2d 437, 164 P.2d 490.

It is my judgment that the General Assembly intended no "reaching out"; and that if it had intended to reduce workmen's compensation benefits to injured state employees (who by reason of such injuries have been forced to retire) it would have been perfectly simple for it to expressly provide therefor in unmistakable terms. Futhermore, if the interpretation given this section of the act, C.R.S. 1963, 81-12-1(5)(a) and (b), is as broad as the majority now seems to think it is, there was no reason to enact a specific paragraph relating to the Federal Social Security Act. (C.R.S. 1963, 81-12-1[4]).

The state employees affected in this case and the other two cases announced this day are not, I contend, recipients of "periodic disability benefits" as used in the Workmen's Compensation Act. They have been *retired* from service and are receiving *retirement* benefits — accelerated because they are no longer able to work for the state — the very same benefits to which they would be entitled upon attaining the various ages prescribed in the act or upon completing the prescribed

period of employment; the very same kind of retirement annuity being paid to fellow members of the Retirement Association by reason of age, illness or disability by injury not in the course of state employment. C.R.S. 1963, 111-1-15. The Public Employees Retirement Act aptly describes the payments by the use of such words as "superannuation" "disability annuity" and "retirement for disability." Also, C. R. S. 1963, 111-1-18, provides that "All annuities granted under the provisions of this article shall be paid in equal monthly installments and shall be *in addition* to any benefits accruing to a state employee under the workmen's compensation act." (Emphasis supplied.) I point out here that although Myers is one of the classification providing for the lowest pay in the state schedule *and* under the majority opinion will have his workmen's compensation benefits reduced by $80, there are other state employees who by reason of the retirement scale would have their workmen's compensation benefits reduced to zero so therefore the retirement would not be "in addition to" compensation benefits, but would be, from a practical standpoint, the sole benefit accruing to the insured employee.

That such retirement benefits to employees (even though retired for such disability as would also entitle them to workmen's compensation) is not synonymous with "periodic disability benefits" may be demonstrated by the following:

To receive the state benefits, one must *retire* from the state payroll. This is not characteristic of nor a prerequisite for the receipt of periodic disability benefits paid (usually under group accident policies or company or union health and welfare plans) to employees in private industry. Retirement benefits to which a state employee becomes entitled are geared to the salary and will be greater or lesser, depending upon the position of the person in the state classified service. On the other hand, disability benefits are usually stated sums, payable weekly, for a limited number of weeks (although

some may be payable for life) and one does not have to retire from employment in order to be eligible for such payments. The amount of such disability benefits usually provide for a larger fixed sum during the period of hospital confinement and another fixed sum for confinement to the home.

Another factor enters into the state retirement picture. When a member of the association is retired — whether for disability or age makes no difference — the payments he receives are dependent upon which one of the five options he has selected under C.R.S. 1963, 111-1-12. For example, he receives a reduced benefit if he has elected to have it paid to himself and to a designated beneficiary having an insurable interest in his life for the full life of the survivor of either of them. This amount is calculated actuarially on the life expectancy of *two* recipients. Disability benefits under sick and accident or health plans *are not payable to persons other than the one disabled* or for the duration of that second person's life if surviving the disability recipient; disability benefits are not payable to designated beneficiaries but *only* to the one disabled and cease after one day or one week, if the disabled person dies.

Another of the options in the state retirement plan provides that the retired state employee may receive one sum if he elects that upon his death no refund will be payable to a designated beneficiary or to his estate of any difference between what has been paid out to him and what is on credit in his account in the retirement fund. On the other hand, he may receive a *different and reduced* retirement benefit if he elects the option which will pay to a beneficiary or to his estate the difference between what has been paid out in annuity payments and what remains in the retirement fund credited by reason of his contributions thereto. It is characteristic of disability benefits that there are no options and there is no fund payable over to any beneficiary or to the insured's estate, regardless of the

amount of premiums paid in excess of the benefits received.

It appears fundamentally important to me that when the retirement benefit varies so widely according to elective options which have no connections with the disability of the insured employee, it renders impossible the use of the formula prescribed in section 81. Under that formula to arrive at the appropriate reductions in workmen's compensation payments, it is necessary for the commission to calculate the amount of *disability* benefits being paid (if it is monthly it is to be converted to a weekly basis) reduce such amount by half (the ratio of the payment by the state employer) and then deduct that sum from the weekly workmen's compensation award. Therefore, in the case of the state retired employee, since the amount he is receiving is not for disability but is on the basis of an annuity calculated under the option selected, it is unrealistic to take that sum and apply the formula in section 81 of the State Compensation Act. No such difficulty is presented in the case of benefits payable under private insurance plans where it is clear that the sum is for disability and is not co-mingled with any actuarially calculated annuity. Under sick and accident plans, since the benefits are fixed and apply to all alike, the formula is uniformly applicable.

The Industrial Commission determined in this case that the deduction from compensation was not proper. I would agree with its interpretation and affirm its award.

MR. JUSTICE PRINGLE joins in this dissent.