**In the Matter of Stanley DAILEY, Petitioner,**

v.

**INDUSTRIAL COMMISSION of the State of Colorado; KSA Hydromec, Inc., and Division of State Compensation Insurance Fund, Respondents.**

**No. 81CA0706.**

Colorado Court of Appeals.

May 13, 1982.

Rehearing Denied June 3, 1982.

Certiorari Granted Sept. 13, 1982.

Paul W. Conaway, P. C., Paul W. Conaway, Denver, for petitioner.

James A. May, William J. Baum, Richard G. Fisher, Denver, for respondents KSA Hydromec, Inc., and State Compensation Ins. Fund.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Robert S. Hyatt, Asst. Attys. Gen., Denver, for respondent Industrial Commission of the State of Colorado.

ENOCH, Chief Judge.

Claimant, Stanley Dailey, seeks review of an order of the Industrial Commission allowing the State Compensation Insurance Fund to claim one-half of the total amount of Social Security Disability Benefits and cost of living increases thereto received by claimant and his dependents, as an offset against workmen's compensation benefits. We affirm.

Claimant's first argument is that Colorado law does not allow the State Compensation Insurance Fund to reduce workmen's compensation benefits when a recipient receives a cost of living increase in his or her Social Security Disability Benefits. We do not agree.

It has been determined that state workmen's compensation benefits may be offset by one-half the amount of an initial Social Security award. *Hurtado v. CF&I Steel Corp.*, 168 Colo. 37, 449 P.2d 819 (1969). However, this is a case of first impression whether workmen's compensation benefits may be offset against a Social Security cost of living increase.

Section 8–51–101(1)(c), C.R.S.1973, provides that certain aggregate workmen's compensation benefits shall be reduced by

one-half of any "federal periodic benefits." This provision does not distinguish between an initial award of periodic benefits and subsequent cost of living increases. Although we acknowledge some authority to the contrary, *see McClanathan v. Smith,* Mont., 606 P.2d 507 (1980), there is no indication in the statute that the General Assembly intended to draw a distinction between initial benefits and subsequent cost of living increases. *Cf. Great Atlantic & Pacific Tea Co. v. Wood,* 380 So.2d 558 (Fla.Ct.App.1980).

■ The rationale behind the setoff provisions is to prevent duplication of benefits at the employer's expense. *See Hurtado v. CF&I Steel Corp.,* 168 Colo. 37, 449 P.2d 819 (1969); *Myers v. Colorado,* 162 Colo. 435, 428 P.2d 83 (1967); *Arellano v. Director, Division of Labor,* 42 Colo.App. 149, 590 P.2d 987 (1979). The same reasoning is equally applicable to Social Security cost of living increases. We hold, therefore, that state workmen's compensation benefits may be offset by one-half the amount of federal Social Security cost of living increases.

■ Claimant further contends that, even if it is assumed § 8–51–101(1)(c), C.R.S.1973, permits Social Security cost of living increases to be offset against workmen's compensation benefits, the statute has been pre-empted by federal law. We disagree.

Claimant's argument is founded on the assumption that there is a conflict between 42 U.S.C.A. § 424a (1974), and § 8–51–101(1)(c), C.R.S.1973. Under the federal statute, if an individual is entitled to federal Social Security Disability Benefits and state workmen's compensation benefits, the individual's Social Security benefits are reduced until his total Social Security and workmen's compensation benefits do not exceed 80% of his "average current earnings" for a defined period prior to the disabling injury. After the claimant's initial disability entitlement is established, claimant will receive that amount plus any cost of living increases allowed by virtue of 42 U.S.C.A. § 415(i)(1) (1974 and 1981 Supp.), and under the federal statute the amount of the cost of living increase is not reduced even though the claimant is also receiving workmen's compensation benefits. 42 U.S.C.A. § 424a(a)(7) through (8) (1974).

Under the state statute, a claimant's workmen's compensation benefits are reduced by one-half of any "federal periodic benefits" regardless of claimant's earnings prior to the disabling injury, and, under our ruling above, claimant's workmen's compensation benefits are reduced by one-half the amount of a cost of living increase in Social Security Disability Benefits. Thus, unlike the federal plan, the Colorado plan, in effect, prevents claimant from collecting the full amount of the cost of living increase awarded him by the federal government.

■ Although at first glance these statutes appear to be inconsistent, the Colorado statute does not conflict with either the letter or the spirit of the federal statute. 42 U.S.C.A. § 424a(d) (1974), provides that

"the reduction of benefits required by this section shall not be made if the workmen's compensation law or plan under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under this subchapter [concerning disability benefits] . . . ."

We view the adoption of this language as Congress' express authorization of state offset plans, and we see no indication that Congress intended to place the restriction urged by claimant on the authority of the states to fashion their own offset plans. By restricting the applicability of the federal offset, Congress has decided that the purposes of the offset—to create work and rehabilitation incentives and eliminate duplicative benefits by reducing the injured worker's total benefit package to a level below his earnings at the time of the accident, *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971)—can be achieved as well by a state plan as a federal

plan. Thus, there is no conflict between the federal and the state statutes and there has been no pre-emption by federal law.

Claimant also argues that Congress has occupied the field of workmen's compensation legislation, thereby preempting state authority to adopt an offset plan which differs from the federal formula. We disagree.

█ It will not be presumed that Congress intended to preempt state legislation in an area unless there is a clear manifestation of such intent, *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978), and the mere adoption of complex or comprehensive legislation is not necessarily indicative of such intent. *New York Department of Social Services v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). Moreover, the United States Supreme Court has recognized that states have broad authority under their police powers to regulate the employment relationship and adopt workmen's compensation laws. *DeCanas v. Bica,* 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976).

In light of Congress' express and unqualified authorization of state offset plans, we hold that there has been no preemption of Colorado's authority to allow the State Compensation Insurance Fund to claim, as an offset against workmen's compensation benefits, one-half of the total amount of Social Security Disability Benefits and cost of living increases thereto received by claimant and his dependents.

Order affirmed.

VAN CISE, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent.

I agree that the rationale behind the set-off provisions of § 8–51–101(1)(c), C.R.S. 1973, is to prevent duplication of benefits. However, the Colorado Workmen's Compensation Law does not provide for cost-of-living increases. Therefore, preservation of the entire federal cost-of-living benefit to the claimant would not result in a duplication of benefits.

The source of federal disability insurance benefits is 42 U.S.C. § 423, and 42 U.S.C. § 415 explains the computation of the "primary insurance amount" for all social security benefits. Section 415(i), entitled "Cost-of-living increases in benefits," provides that if the Consumer Price Index increase exceeds 3%, the primary insurance amount is increased accordingly. The relationship between federal benefits and state benefits is explained in 42 U.S.C. § 424a, which provides that, when a claimant receives both social security and state workers' compensation payments, the social security payments may be reduced until, when combined with the state payments, they equal 80% of the claimant's average current earnings *unless* the state law also provides for a reduction of benefits payable to persons receiving social security payments. Since § 8–51–101(1)(c), C.R.S.1973, provides for such a reduction in state benefits, there is no reduction in social security payments under 42 U.S.C. § 424a(d). Thus, duplication of primary benefits is avoided by the state and federal provisions.

I agree with the Montana Supreme Court in *McClanathan v. Smith,* Mont., 606 P.2d 507 (1980) that it is not "equitable or necessary" that the state reclaim 50% of the claimant's federal cost-of-living increases to avoid duplication.

"The benefits to which [the claimant] is entitled under 42 U.S.C. § 423 are disability benefits, not cost-of-living benefits.... [T]he provisions of 42 U.S.C. § 424a(d) allowing the states to provide an offset contemplate only the benefits recoverable under 42 U.S.C. § 423, relating to the individual's primary insurance benefits. Therefore, we hold that the state offset may not be used to reduce the benefits accruing to the [claimant] under the cost-of-living increases provid-

ed in 42 U.S.C. § 415." 606 P.2d at 511–12.

While it is true that § 8–51–101(1)(c), C.R.S.1973, does not distinguish between an initial award of periodic benefits and subsequent cost-of-living increases, the section does provide that, "if provisions of the [Social Security Act] should be amended to provide for a reduction of an individual's disability benefits thereunder because of compensation benefits payable [by the State], the reduction of compensation benefits ... shall be decreased by an amount equal to such federal reduction." Thus, the statute reveals a legislative intent that the total package of benefits received by the claimant will not be reduced by an amount more than 50% of the original award. The social security cost-of-living increases are aimed at preserving, not increasing, the buying power of the original award, and the reduction of such benefits by 50% would have the effect of reducing the original award, a result not intended by the General Assembly.

I believe the claimant is entitled to preservation of the original award by means of federal cost-of-living increases. Therefore, I would not permit such increases to be reduced by the state compensation fund.