**HALLIBURTON SERVICES and Highlands Insurance Company, Petitioners,**

v.

**Robert MILLER and the Industrial Commission of the State of Colorado, Respondents.**

**Robert MILLER, Petitioner,**

v.

**HALLIBURTON SERVICES, Highlands Insurance Company, and the Industrial Commission of the State of Colorado, Respondents.**

Nos. 84SC229, 84SC232.

Supreme Court of Colorado, En Banc.

June 9, 1986.

Knapp, Lee and York, Byrum C. Lee, Jr., Denver, for Halliburton Services and Highlands Ins. Co., petitioners in 84SC229 and respondents in 84SC232.

George T. Ashen, James E. Freemyer, Denver, for respondent Robert Miller, petitioner in 84SC232 and respondent in 84SC229.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for respondent Industrial Comn.

LOHR, Justice.

In *Miller v. Halliburton Services,* 689 P.2d 662 (Colo.App.1984), the Colorado Court of Appeals affirmed in part and set aside in part a final order of the Industrial Commission in which the commission awarded claimant Robert Miller permanent partial and temporary total disability benefits. Both the claimant and the employer, Halliburton Services (Halliburton), filed petitions for certiorari.[1] We granted the petitions, and we now affirm.

I.

In November of 1971, the claimant, an employee of Halliburton, sought medical treatment for a back problem. It is disputed whether Miller notified Halliburton at that time that his medical problem was due to an injury suffered while in the course of his employment. It is undisputed that Halliburton did not notify the Industrial Commission of the occurrence of an on-the-job injury to Miller for which worker's compensation benefits might be payable, as

---

1. Highlands Insurance Company, the worker's compensation insurance carrier for Halliburton, joined in Halliburton's petition for certiorari. The arguments advanced by these two petitioners are identical and jointly made. In this opinion, we refer to the arguments of these copetitioners simply as those of Halliburton.

was required at the time by section 81–13–5(1), 1963 C.R.S.,[2] if such an injury occurred.

On December 13, 1971, Miller underwent back surgery. He was unable to return to work for Halliburton until December of 1972. While out of work, Miller received payments pursuant to Halliburton's "Sickness Benefit Plan." Halliburton implemented the plan in order that "[d]uring periods of total disability caused by sickness or by injury not arising out of or in the course of employment, employees may be given financial aid by the Company." Pursuant to the plan, Miller received the equivalent of full pay for twenty-six weeks and half pay for twenty-six weeks. Payments to Miller under the plan totalled $7,921.89.

On November 16, 1976, five years after the onset of his medical problems, Miller filed what he called a "Petition to Re-Open Claim" with the state division of labor. In that petition, Miller alleged that he was injured in an industrial accident arising out of and in the course of his employment "on or about the 15th day of November, 1971." He further alleged that he had received compensation in the sum of $7,921.89 directly from the employer, representing 26 weeks of temporary total disability payments and 26 weeks of temporary partial disability benefits. He asserted that the amounts paid by the employer "should be considered compensation under the definition as set forth in the Colorado Statutes ... relative to Workmen's Compensation that an employee would be entitled to receive as a result of an accident arising out of and in the course of his employment with the employer." Miller then alleged that his condition had worsened, with the result that he suffered from permanent partial disability. He asked the division of labor to "reopen" the matter and determine whether he was entitled to benefits for

temporary total disability, permanent partial disability, permanent total disability and medical expenses. Two days later, Miller also filed an "Accidental Injury Claim For Compensation." In that claim, Miller alleged that an accident had occurred on November 15, 1971, while he was working for Halliburton, that he had reported the accident to Halliburton on that day, and that his back had been injured in the accident, resulting in permanent disability for which he sought compensation.

A lengthy set of hearings and other proceedings on the claim ensued before the division of labor. These culminated in an order and several supplemental orders by a hearing officer resolving the relevant issues. The hearing officer found that Miller sustained an industrial accident on November 6, 1971,[3] while performing duties as a cementer for Halliburton and that he reported the accident to the district supervisor for Halliburton within two days of the accident. As a result of this mishap, Miller was found to have sustained permanent partial disability of 5% as a working unit, and the employer was ordered to make periodic payments totalling $4,784.50 in compensation for Miller's disability.

The hearing officer rejected Halliburton's defense that the claim was barred by the one-year statute of limitations for the filing of claims in section 81–13–5(2), 1963 C.R.S. (1971 Perm.Supp.). He ruled that the statute was tolled by the failure of the employer, who was adequately notified of the injury, to file a report of the accident with the division of labor.

The hearing officer also rejected Halliburton's argument that the payments made to Miller under the Sickness Benefit Plan should be offset against the award. Halliburton asserted the right to such an offset under section 81–12–1(5)(a), 1963 C.R.S. (1971 Perm.Supp.),[4] which then provided

---

**2.** Now codified as amended at § 8–52–105(1), 3 C.R.S. (1973).

**3.** During one of the hearings, the claimant testified that his accident and injury occurred on November 6, 1971, rather than on November 15,

1971, as he alleged in his claim for compensation and the petition to reopen.

**4.** Now codified as amended at § 8–51–101(1)(d), 3 C.R.S. (1973).

for a reduction in disability benefits otherwise payable to an employee upon a determination that "periodic disability benefits are payable to an employee under the provisions of a pension plan financed in whole or in part by the employer." Halliburton took the position that the moneys paid to Miller in 1971 and 1972 pursuant to the Sickness Benefit Plan were payments from just such a pension plan. The hearing officer rejected this contention as unproven.

Finally, the hearing officer did not accept Halliburton's claim for a credit pursuant to section 81–12–9(3)(a), 1963 C.R.S. (1971 Perm.Supp.).[5] That statute provided that when a final order resulted in a finding of permanent partial disability of five percent or less as a working unit, the employer could continue the disabled employee "at the employee's normal rate of pay" with all employment advantages, including wage and promotional advantages, to which the employee would have been entitled prior to the accident in lieu of paying worker's compensation benefits (hereafter, the five percent rule). The hearing officer's ruling on this matter was based on his finding that the evidence established that Miller had suffered a reduction in total pay when he returned to work, with the result that one of the statutory requirements for the applicability of the credit had not been satisfied.

Halliburton sought review of the hearing officer's orders before the Industrial Commission. The commission affirmed those orders with the exception that the commission found that the hearing officer erred in disallowing an offset against the permanent partial disability payments pursuant to the five percent rule.

Both Miller and Halliburton petitioned the court of appeals for review of the final order of the commission. The court of appeals consolidated the petitions. The commission then filed a motion for a remand of the matter to the commission. The court of appeals granted the motion "for the purposes stated in the motion," a copy of which was attached to the order of remand and incorporated by reference. The commission then remanded the matter to a hearing officer for further hearings "to resolve questions of whether certain offsets against the claimant's workmen's compensation award apply...." The hearing officer was directed to consider certain specific issues listed in the motion to remand as "among the questions to be considered."

Pursuant to this order, a different hearing officer held hearings and issued an order which included additional findings. Among other findings and conclusions, the hearing officer rejected Halliburton's claim for an offset based on the payments made by Halliburton under the Sickness Benefit Plan, ruling that the plan was not a pension plan within the meaning of section 81–12–1(5)(a), 1963 C.R.S. (Perm.Supp.1971). The hearing officer found that the company's plan "existed to provide benefits to employees for other than work-related injuries" and was "nothing more than a provision for continuation of wages during a period of sickness for which employees were charged accrued sick leave." The hearing officer further found and concluded that Miller suffered permanent partial disability in the amount of 16.4% as a working unit, rather than in the amount of 5% as found by the original hearing officer and then affirmed by the commission. The hearing officer calculated the new figure by comparing Miller's aggregate pay before the injury in 1971 with his aggregate pay after he returned to work in 1972, based on 1971 wage rates. The hearing officer did not address the issue of the five percent rule, presumably because he found Miller's permanent partial disability to be greater than 5%.

Halliburton filed another petition for review, and the matter was referred to the commission. On January 20, 1983, the commission issued an order affirming the hearing officer's order in part and revers-

---

**5.** Later codified as amended at § 8–51–108(3), 3 C.R.S. (1973), and then repealed by ch. 71, sec. 62, 1975 Colo. Sess. Laws 291, 311.

ing it in part. The commission concluded that the hearing officer exceeded his authority and the scope of the remand order in reopening and modifying the extent of permanent partial disability suffered by Miller. The commission reinstated Miller's permanent partial disability rating of 5% as a working unit. The commission then affirmed the hearing officer's conclusion that "the employer's payments from a sickness-benefit plan do not constitute workmen's compensation benefits for which it may receive credit." Finally, the commission considered anew Halliburton's claim for a credit under the five percent rule and reinstated the credit.

Halliburton and Miller both filed supplements to their petitions for review in the court of appeals. On April 19, 1984, the court of appeals affirmed the commission's order in part and set it aside in part and remanded the matter to the commission with directions to modify the order. *Miller v. Halliburton Services*, 689 P.2d 662 (Colo.App.1984). The court held that the evidence in the record was sufficient to support the commission's findings that the claimant suffered an industrial accident on November 6, 1971, and that the claimant suffered 5% permanent partial disability as a result of that accident. *Id.* at 664, 665. The court of appeals also affirmed the commission's conclusion that Miller's claim was not barred by the one-year statute of limitations in section 81-13-5(2), 1963 C.R.S. (1971 Perm.Supp.), because it was undisputed that Halliburton did not file a report of the accident with the commission as the statute required before the period of limitation would begin to run. In reaching this conclusion, the court held that the evidence in the record was sufficient to support the commission's finding that Miller promptly notified Halliburton that Miller had suffered an accident while in the course of his employment. *Id.* at 664–65.

Next, the court of appeals affirmed the commission's denial of an offset based on the payments made by Halliburton under the Sickness Benefit Plan, holding that "nothing in the language of the statute or in the opinions construing it indicate[s] any intent on the part of the General Assembly to extend the statutory set off provision to health insurance benefits." *Id.* at 665. Finally, the court of appeals reversed the commission's decision to allow a credit under the five percent rule. *Id.* at 665–66. In its opinion, the court of appeals implicitly rejected, but did not explicitly address, Miller's contention that the commission erred in reversing the hearing officer's decision on remand to increase Miller's permanent partial disability rating to 16.4% as a working unit.

Miller filed a petition for certiorari in this court, arguing that the hearing officer had the authority to modify the claimant's award of permanent partial disability benefits following the remand and that the commission erred in reversing that modification. Halliburton also filed a petition for certiorari, arguing that Miller's claim was barred by the statute of limitations applicable to workers' compensation claims; that the evidence in the record was not sufficient to prove that Miller suffered an injury arising out of and in the course of employment; and that the disability benefits paid to Miller under the Sickness Benefits Plan should have been used to offset any benefits properly due the claimant under the Workmen's Compensation Act. Halliburton did not seek review of the disallowance of a credit under the five percent rule. We granted both petitions. We first discuss the issue raised by Miller concerning the scope of the remand from the court of appeals.

## II.

Miller does not dispute that the court of appeals could limit the issues to be considered by the commission on remand or that the commission was required to comply with the terms of the remand order. *See Meyer v. Milliken*, 105 Colo. 532, 538, 100 P.2d 151, 153, *rev'd on other grounds*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *Galbreath v. Wallrich*, 48 Colo. 127, 130–33, 109 P. 417, 418–19 (1910); *People ex rel. Warren v. Carpenter*, 29 Colo.

365, 369–71, 68 P. 221, 222–23 (1902) (per curiam). *See also People v. Roybal*, 672 P.2d 1003, 1005–06 (Colo.1983). Miller contends, however, that the hearing officer's reconsideration and modification of Miller's permanent partial disability rating from 5% as a working unit to 16.4% as a working unit was within the scope of the court of appeals' remand order. The commission disagreed. The critical issue, then, is the proper interpretation of the remand order. This, in turn, depends on the interpretation of the commission's motion to remand, for the court of appeals' remand order simply granted and incorporated that motion.

The commission's motion is not a model of clarity. On the one hand, it expresses the commission's desire to review, reconsider, and supplement the record "as it deems necessary to determine all the issues in this case." In its specification of the particular issues the commission wished to consider, however, the motion focuses on facts concerning the applicability of statutory set-offs, including setoffs under the five percent rule and for payments made under an employer pension plan. No mention whatsoever is made of the wish to reconsider the extent of Miller's permanent partial disability, although Miller urges strenuously that this issue is implicit in a review of the right to a setoff under the five percent rule, which applies only when permanent disability is found to be 5% or less.

In reversing the hearing officer's modification, the commission reviewed its motion for remand as well as the order of remand of the court of appeals and the commission's own order of remand, both of which orders were based upon the commission's motion. The commission concluded that neither remand order expressly or impliedly authorized the hearing officer to re-

open the determination of the extent of Miller's disability.

■ The court of appeals' order of remand is ambiguous, susceptible either to the broad interpretation placed upon it by the claimant or to the narrower interpretation placed upon it by the commission. Given that the particulars of the remand order are of the commission's own creation, we deem it proper in this instance to defer to the commission's interpretation of what is, essentially, its own document.[6] We find no error in the commission's conclusion that the remand order did not authorize the hearing officer to redetermine the extent of the claimant's permanent partial disability. We turn next to the issues raised by Halliburton in its petition for certiorari.

### III.

Halliburton argues that Miller's claim is barred and should be dismissed because it was not filed within the one year period of limitations set forth in section 81–13–5(2), 1963 C.R.S. (1971 Perm.Supp.), applicable at the time the alleged injury occurred. The hearing officer found, and the commission and the court of appeals affirmed, that the one year period of limitations never began to run because the employer did not file an injury report.

The statute provided in relevant part: [I]n all cases in which the employer has been given notice of an injury and fails, neglects, or refuses to report said injury to the division as required by the provisions of this chapter, this statute of limitations shall not begin to run against the claim of the injured employee ... until the required report shall have been filed with the division.

---

**6.** We are aware of the general principle of law that ambiguities in the terms of a contract must be construed against the drafter of the contract. *See, e.g., Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016 (Colo.1986). However, we see no reason to extend the rule to require that ambiguities in the commission's motion for a remand, and therefore in the court of appeals' order of remand incorporating that motion, must be construed against the drafting party, the commission. Factors that persuade us to reach this conclusion include the fact that the motion does not embody an agreement *between* parties, does not purport to create rights and obligations on the part of other parties, and was intended by the commission to seek permission from the court of appeals to review certain questions—a request whose scope was entirely within the discretion of the commission when the motion was filed.

Halliburton does not dispute that it did not file an injury report. Halliburton contends, however, that it never received notice of the injury from Miller. Thus, the argument proceeds, Halliburton had no knowledge of or duty to report the accident and injury, and the one-year statute of limitations should not have been tolled on this basis. *Cf. Monks Excavating & Redi-Mix Cement v. Kopsa,* 148 Colo. 586, 367 P.2d 321 (1961) (in department) (no duty on the part of an employer to report the occurrence of an injury when the employee did not notify the employer of any injury resulting from an accident).

Miller testified that he reported the details of the accident as well as the resulting injury to his supervisor within two days after the November 6, 1981, accident. Miller's supervisor did not testify, and none of the Halliburton representatives who did testify disputed Miller's account that he reported his injury. However, the company placed in evidence a number of documents for the purpose of rebutting Miller's testimony that he reported an on-the-job accident that resulted in his injury. These documents consisted of medical and employment reports and insurance forms completed by Miller's treating doctors or their staff or ostensibly filled out or signed by Miller himself. As recorded in these documents, Miller either specifically stated that his injury was not the result of any accident and did not result from any specific precipitating factors or Miller failed to provide information where requested that would have established a relationship between his injury and an accident occurring while he was working. Cross-examined about these documents, Miller answered variously that he reported the accident to his employer and certain doctors but that they incorrectly recorded the information, that he said nothing to others about the manner in which his accident occurred because he was not asked and these persons chose to assume that he had not experienced an accident while in the course of his employment, and that he signed an insurance form and a blank employee statement incorrectly filled in by others to reflect that

Miller's injury was not caused by an accident.

The doctor who performed the surgery on Miller testified and stated, contrary to Miller's testimony, that Miller gave no history in December 1971 of an on-the-job accident causing his back injury. The doctor's records corroborated this testimony. The doctor further testified that the first report he had from Miller that an on-the-job accident caused Miller's 1971 back injury was when Miller called the doctor's office in 1974, three years after the injury and the surgery, and told the doctor that he had an additional history to report. According to the doctor's testimony, Miller said that he wanted to add to his medical history because he was petitioning to reopen a Workmen's Compensation case.

■ Thus, Miller's testimony that he reported his injury to his employer two days after the accident is in conflict with the inferences from the evidence produced by the company that prior to 1974 Miller consistently failed to assert that his injury was related to an on-the-job accident. Ordinarily, the resolution of conflicts in the evidence and the determination of the credibility of witnesses are matters properly left to the commission, and the courts are not at liberty to overturn any such resolution if supported by evidence in the record. *See, e.g., Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850, 856 (Colo.1983); *Sena v. World of Sleep, Inc.,* 173 Colo. 348, 350–51, 478 P.2d 671, 672 (1970); *Crandall v. Watson-Wilson Transportation System, Inc.,* 171 Colo. 329, 333, 467 P.2d 48, 50 (1970); *Curtis v. Industrial Commission,* 167 Colo. 462, 466–67, 447 P.2d 1012, 1014 (1968). As the court of appeals noted here, the claimant's testimony, if believed, is sufficient to establish that notice was given to the employer. *Miller v. Halliburton Services,* 689 P.2d at 665.

Halliburton argues, however, that the evidence rebutting Miller's testimony that he reported the accident is so overwhelming that Miller's testimony lacks credibility as a matter of law. We disagree. It may be

that the testimony of a particular witness, although direct and unequivocal about a particular point, could be so overwhelmingly rebutted by hard, certain evidence directly contrary to the testimony that a hearing officer or other fact finder would err as a matter of law in believing the testimony of the witness. We are not faced with such an extreme situation here.

For one reason, the evidence tendered by Halliburton does not directly undermine Miller's testimony. Miller testified that he reported the accident to his employer within two days after the November 6, 1971, injury. Miller did not seek medical attention until late in November or early December, and all of the documentary and other evidence relied on by Halliburton was generated at this time or later. While this evidence raises a substantial inference that Miller did not notify his employer or anyone else that his injury was the result of an on-the-job accident, it cannot be seen as evidence directly contrary to Miller's testimony as to what took place between November 6 and November 8, 1971. Under these circumstances, we are not prepared to hold as a matter of law that Miller's testimony was not credible.

### IV.

Halliburton argues next that the evidence in the record does not support the commission's finding that Miller suffered an injury arising out of and in the course of his employment. The hearing officer made a specific and detailed finding that the injury occurred while Miller was engaged in work for his employer, and the commission and the court of appeals affirmed that finding. *See Miller v. Halliburton,* 689 P.2d at 664. The hearing officer's finding reflected his belief in Miller's testimony as to how the accident happened, corroborated by the testimony of the doctor who performed surgery on Miller in December 1971 that he believed Miller's injuries resulted from just such an accident.

■ Halliburton's challenge on this point is identical to its argument on the issue discussed in part III—that the documenta-

ry and other evidence in the record establishes that Miller neither claimed nor experienced an injury while on the job. Again, this is an argument that Miller's testimony as a matter of law is not credible and that the hearing officer erred in relying on such testimony to make his finding of fact. For the reasons explained in part III, we do not agree with this argument. The commission's finding on this issue is supported by the evidence in the record.

### V.

Finally, Halliburton argues that the commission's award of disability benefits to Miller should be offset by an amount equal to the benefits paid to Miller under the company's Sickness Benefit Plan. Because the benefits paid to Miller pursuant to the plan are greater than the amount Miller is scheduled to receive pursuant to the worker's compensation award, this offset would reduce the worker's compensation award to zero. Halliburton argues that such an offset is mandated by former section 81–12–1(5), 1963 C.R.S. (1971 Perm.Supp.), applicable during the time Miller was off work due to his medical problem and while payments were made under the plan. This statute provided in relevant part:

> In cases where it is determined that periodic disability benefits are payable to an employee under the provisions of a pension plan financed in whole or in part by the employer, hereinafter called "employer pension plan", the aggregate benefits payable for temporary total disability, temporary partial disability, permanent partial disability, and permanent total disability pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly as practical to such employer pension plan benefits....

■ Halliburton contends that the Sickness Benefit Plan constituted a "pension plan" and the payments received by Miller were "periodic disability benefits." The hearing officer disagreed, and the commission and the court of appeals affirmed. *See Miller v. Halliburton Services,* 689 P.2d at 665. We agree that no offset was

allowable, because Halliburton's Sickness Benefit Plan was not a pension plan as that term is used in the statute.

We had occasion to analyze the applicability of this statute and the meaning of the term "pension plan" in *Myers v. State of Colorado*, 162 Colo. 435, 428 P.2d 83 (1967). We held that the general assembly "used the phrase 'pension plan' in the broad, generic sense," 162 Colo. at 440, 428 P.2d at 86, with the intention that "an injured employee should not be permitted to receive so-called 'double' disability benefits, *i.e.* both workmen's compensation benefits and disability annuity at the expense of the employer," 162 Colo. at 440–41, 428 P.2d at 86. In that light, we analyzed a PERA disability annuity provided to the claimant Myers when he was forced to retire due to injuries suffered on the job. We concluded that these payments constituted periodic disability benefits from a pension plan, with the result that an offset was required against the periodic permanent partial disability payments awarded by the Commission. 162 Colo. at 438–41, 428 P.2d at 85–86.

Halliburton argues here that Miller received just such a double recovery, and that for this reason, the company's Sickness Benefit Plan must be considered a "pension plan" under the statute. The defect in Halliburton's argument is that by the express terms of the company's own plan, there should be no double recovery in this instance. That is because the preamble to the plan provided that payments would be made to an employee "[d]uring periods of total disability caused by sickness or by injury *not arising out of or in the course of employment."* (Emphasis added.) It was on this basis that Miller received payments under the plan. Thus, plan benefits and workers' compensation benefits—which are intended to compensate for injuries arising out of and in the course of employment—are mutually exclusive.

Halliburton has a legitimate concern that Miller received payments under the company's Sickness Benefit Plan to which he was not entitled, as shown by the com-mission's finding that Miller's injury arose out of and in the course of his employment with Halliburton. The remedy of Halliburton or its insurer, however, was to seek reimbursement from Miller for the payment of the benefits made under the plan. The duty of the commission under the statute in question is to offset worker's compensation disability payments to the extent that the claimant is entitled to and receives periodic disability benefits pursuant to an employer pension plan. Nothing in the statute authorizes the commission to order reductions in a worker's compensation award on the basis of benefits paid to a claimant under a separate and expressly unrelated plan simply because the commission's determination of entitlement to worker's compensation benefits incidentally proves that the claimant was not entitled to those separate payments. The commission correctly refused to allow the requested offset.

The judgment of the court of appeals is affirmed.