**The INDUSTRIAL COMMISSION OF the STATE OF COLORADO, Petitioner,**

v.

**Patsy EDLUND, Colorado State University and State Compensation Insurance Fund, Respondents.**

No. 86SC221.

Supreme Court of Colorado, En Banc.

May 9, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Winters, First Asst. Atty. Gen., Human Resources Section, Denver, for petitioner.

Law Offices of Daniel W. Dean, Daniel W. Dean, Fort Collins, for respondents.

ROVIRA, Justice.

On December 4, 1973, Respondent Patsy Edlund injured her right hip during the course of her employment at Colorado State University. As a consequence she was awarded disability benefits under both the Public Employees' Retirement Act, §§ 24-51-101 to -1109, 10 C.R.S. (1973) (PERA), and the Workmen's Compensation Act of Colorado, §§ 8-40-101 to 8-54-127, 3 C.R.S. (1973). Petitioner, the Industrial Commission of the State of Colorado (Commission),[1] contends that the court of appeals utilized an incorrect formula to calculate the amount by which Edlund's workers' compensation benefits must be offset by her PERA benefits. *Edlund v. Industrial Commission*, 725 P.2d 75 (Colo.App. 1986). We agree, and therefore reverse the judgment of the court of appeals.

When Edlund was injured, she was eligible to receive a disability annuity under the following provision of PERA:

Whenever any member of the retirement association, who has been an employee of this state has at least five years of credited service since the latest date of covered employment and is under the superannuated retirement age, after examination by one or more physicians selected by the [public employees' retirement association] board, is found to be permanently incapable, mentally or physically, of performing his regular employment duties, as may be determined by the board, such member shall become entitled to an annuity equal to the annuity payable under section 24-51-111 which would have been payable at age sixty-five.... The annuity shall continue so long as the disability continues, and in case of recovery therefrom, as may be determined by the retirement board, such annuity shall continue until the annuitant

---

1. The Industrial Commission of Colorado was abolished in 1986, but remains the nominal petitioner in this case.

has been reinstated in his former position or has been reoffered his former position in state service or offered a position in public or private employment in which the compensation, combined with his retirement allowance, is equal to or in excess of the compensation earned while last engaged in the public service.

§ 24-51-115, 10 C.R.S. (1973). Upon determining that Edlund was incapable of performing her regular duties at Colorado State University, the Public Employees' Retirement Association awarded her a disability annuity of $192.06 per month, or $44.32 per week, commencing April 29, 1974.

Edlund also applied for workers' compensation benefits, and the Commission awarded Edlund temporary total disability benefits to June 26, 1976.[2] In addition, the Commission found that the injury had left Edlund 15 percent disabled as a working unit after she reached maximum medical improvement on June 26, 1976, and therefore awarded her permanent partial disability benefits from that date under section 8-51-108(1), 3 C.R.S. (1973).[3] The Commission calculated that Edlund was entitled to receive, before any offset, the maximum compensation permitted under the statute for her permanent partial disability: $16,835 payable at $64.75 per week for 260 weeks.

Because Edlund was also receiving PERA disability benefits, the Commission was required to reduce her workers' compensation benefits under section 8-51-101(1)(d), 3 C.R.S. (1973):

In cases where it is determined that periodic disability benefits are payable to an employee under the provisions of a pension plan financed in whole or in part by the employer, hereinafter called "employer pension plan," the aggregate benefits payable for temporary total disability, temporary partial disability, permanent partial disability, and permanent total disability pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly as practical to such employer pension plan benefits, with the following limitations:

(I) Where the employee has contributed to the employer pension plan, benefits shall be reduced under this section only in an amount proportional to the employer's percentage of total contributions to the employer pension plan.

Colorado State University contributed 50 percent of payments made to the PERA pension plan, so the Commission determined that $22.16 per week, half of her PERA benefit, should be deducted from her workers' compensation benefits. After applying that offset, the Commission's final order decreed that Edlund was entitled to receive $42.59 per week for 260 weeks commencing on June 26, 1976.[4]

The court of appeals reversed the Commission's order after finding that the Commission had calculated the PERA offset improperly:

We conclude that there should be an offset from PERA equal to the employer's percentage of contributions to claim-

2. The Commission's calculation of the offset against Edlund's total temporary disability payments is not at issue.

3. Section 8-51-108(1), 3 C.R.S. (1973), provided in pertinent part:
(a) Where an accident causes injury resulting in permanent partial disability ... the injured employee shall be deemed permanently disabled from the time he is so declared by the director and from said time shall be entitled to compensation for permanent partial disability in addition to any compensation theretofore allowed.
(b) In determining permanent partial disability, the director shall ascertain in terms of percentage the extent of general permanent disability which the accident has caused, taking into consideration not only the manifest

weight of the evidence, but also the general physical condition and mental training, ability, former employment, and education of the injured employee.... He shall then ascertain the total amount which said employee would receive during the balance of his [life] expectancy ... not to exceed in any event the aggregate sum of sixteen thousand eight hundred thirty-five dollars, said sum to be paid at a weekly rate of not more than sixty-four dollars and seventy-five cents.

4. The Commission affirmed the hearing officer's final order, which apparently miscalculated the permanent partial disability as $41.59 per week. The correct amount, as originally determined by the hearing officer, should be $42.59 per week.

ant's PERA benefits *to the extent of her permanent partial disability.* Since the employer contributed on a matching basis to claimant's PERA benefits, 50% of her 15% or 7½% of her PERA benefits will be used to reduce the amount of her workmen's compensation permanent partial disability benefits.

. . . .

A 100% offset from PERA would be incorrect and work a hardship upon claimant. That would mean that all of her PERA benefits were intended to cover her permanent partial disability of 15%. Surely her PERA benefits are not so limited.

725 P.2d at 77–78 (emphasis added).

The formula utilized by the court of appeals comprises two components: First, the claimant's employer pension benefit must be multiplied by the percentage of the claimant's permanent partial disability to arrive at a gross offset amount. Second, that gross offset amount is then multiplied by the employer's percentage of contributions to the pension plan to arrive at the final offset amount. In applying that formula to this case, the court of appeals determined first that only 15 percent of Edlund's PERA disability annuity—the percentage of her permanent partial disability—should be used to offset her workers' compensation award, and then that only half of that amount, or 7½ percent of her total PERA annuity, was attributable to her employer's contributions to the PERA pension plan and could be used to offset her workers' compensation benefits.

The Commission contends that the formula employed by the court of appeals has no basis in the statutory offset provision. We agree.

Our duty in interpreting the statute is to give effect to the intent of the legislature. *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984). In light of the beneficent purpose of the workers' compensation laws, we will construe them liberally in favor of claimants, *Claimants in the Matter of Death of Garner v. Vanadium Corp. of America,* 194 Colo. 358, 360, 572 P.2d 1205, 1206–07 (1977); *James v. Irrigation Motor & Pump Co.,* 180 Colo. 195, 199, 503 P.2d 1025, 1028 (1972), but we will not resort to a "[f]orced, subtle, strained or unusual interpretation ... where the language is plain, its meaning clear, and no absurdity is involved," merely to favor the claimant. *Harding v. Industrial Commission,* 183 Colo. 52, 59, 515 P.2d 95, 98 (1973); *Bailey v. Lakewood Fire Protection District,* 44 Colo.App. 463, 466, 618 P.2d 716, 718 (1980).

We first determined that PERA benefits must be applied to offset workers' compensation awards in *Myers v. Colorado,* 162 Colo. 435, 428 P.2d 83 (1967), and we explained there the purpose of the offset provision:

> [T]he General Assembly intended to require a reduction in the workmen's compensation benefits otherwise payable to an injured employee where the employer, who has himself already paid the cost of workmen's compensation insurance, has also purchased, in whole or in part, a disability pension or annuity plan for his employee. The General Assembly was of the view that an injured employee should not be permitted to receive so-called "double" disability benefits, *i.e.* both workmen's compensation benefits and [a] disability annuity at the expense of the employer.

162 Colo. at 440–41, 428 P.2d at 86.

The statute's requirement that a claimant's workers' compensation benefits "shall be reduced, but not below zero, by an amount equal as nearly as practical to such employer pension plan benefits" is stated in precise language; an employee's total pension benefit, except that attributable to the employee's contributions to the plan, must be used to offset her workers' compensation benefits. That language cannot reasonably be construed as supporting the first portion of the court of appeals' formula, which requires that the employee's disability annuity be multiplied first by the percentage of her permanent partial disability before determining the final offset

in light of the employer's contributions to the pension plan.

Moreover, the formula utilized by the court of appeals frustrates the statute's intent that workers not be compensated twice for one injury at their employers' expense. Edlund is entitled to $44.32 per week under PERA for her inability to maintain employment at the salary she drew from the state, $22.16 of which is attributable to her employer's contributions to the PERA pension program. In addition, Edlund was entitled to receive $64.75 per week in permanent partial disability benefits under the Workmen's Compensation Act for the same diminished income potential. Both benefits were intended to compensate Edlund for one loss,[5] and to the extent that the offset as calculated by the court of appeals is less than $22.16 per week, she would be twice compensated for her injury.

The Commission's determination that Edlund's workers' compensation benefits should be offset by $22.16 per week was correct. Accordingly, the judgment of the court of appeals is reversed.

---

5. Edlund disputes the contention that both benefits are intended to compensate the same injury. She argues in her brief that PERA benefits are payable only when the claimant is 100 percent disabled, and that:

The Court of Appeals' decision gives recognition to the existence of two (2) separate disabilities. One (1) disability is the 15% as a working unit which arose out of the industrial accident. The other disability is the 85% which arose from other sources. In combination the disabilities give rise to the PERA benefit. The Claimant does not receive double recovery for the 15% disability because of the statutory offset.

Edlund's argument is based on the erroneous assumption that Edlund was considered 100 percent disabled under PERA. The relevant language of PERA, as quoted above, requires neither that the percentage of a worker's disability be fixed for purposes of determining her entitlement to an annuity, nor that a worker be totally precluded from employment in order to receive that annuity. In fact, the statute contemplates that a worker such as Edlund will be able to find employment at a salary less than her former state salary, yet not lose her disability annuity. It thus makes no sense to infer from Edlund's receipt of a PERA disability annuity that she is "100% disabled."