**Hugh D. WALKER, Petitioner,**

v.

**CITY AND COUNTY OF DENVER, a municipal corporation; and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 93CA1119.

Colorado Court of Appeals,
Div. III.

Feb. 24, 1994.

Ashen & Associates, P.C., George T. Ashen, Denver, for petitioner.

Daniel E. Muse, City Atty., Olivia L. Hudson Smith, Asst. City Atty., Denver, for respondent City and County of Denver.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., James C. Klein, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Opinion by Judge CRISWELL.

Hugh D. Walker contests a final order of the Industrial Claim Appeals Panel allowing the City and County of Denver (City), a self-insured employer, to offset the claimant's

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

workers' compensation benefits by amounts paid to him under the City's pension disability plan. We affirm.

The essential facts are undisputed. The claimant, a 30–year police veteran, sustained a 12% permanent partial disability as the result of an admitted industrial accident in 1987. In August 1990, claimant retired from the City as a result of the injury and began receiving disability retirement benefits.

The sole issue at the hearing was whether the City is entitled to offset claimant's pension benefits under the provisions now codified at § 8–42–103(1)(d), C.R.S. (1993 Cum. Supp.).

Claimant was hired by the Denver Police Department in 1960 under an "old hire" pension retirement plan. Under this plan the City made contributions to the police pension fund on a pay-as-you-go basis with a limited reserve. The pension was funded by annual· appropriations out of the City's general fund, which were used to pay the current retirement benefits obligations. As a consequence, the City's liability for benefits for future retirees, which was a substantial sum, was unfunded, and its pension program was not actuarially sound.

In 1979, however, the Policemen's and Firemen's Pension Reform Act, § 31–30–802, et seq., C.R.S. (1986 Repl.Vol. 12B) (the Act) was adopted. The Act established statewide funding and actuarial standards to insure that municipalities were able to finance their fire and policemen's pension liabilities. It also required cities to make accelerated annual contributions to police and firefighter pension funds over a period of years in order to fund the unfunded accrued liability of such plans, as well as the present service cost attributable to active members. Section 31–30–805, C.R.S. (1986 Repl.Vol. 12B). All monies appropriated to the police pension plan by the City and County of Denver for "old hires" and for "new hires" after adoption of the Act are collected from the City's tax revenues.

The City retained an independent actuary to prepare a profile of the claimant's pension benefits and to determine both his and the City's respective contributions to the plan. Relying on the methodology set forth in the Internal Revenue Code, 26 U.S.C. § 411(c) (1988), the actuary testified that the City contributed 83.9% to the claimant's disability retirement pension. Based on this evidence, the Administrative Law Judge (ALJ) found that claimant receives a pension annuity of $448 per week, of which $72 is attributed to claimant's contribution and $376 is attributed to the City's contribution. Because the City's proportional share of the disability pension exceeds the claimant's weekly workers' compensation benefit of $84, the ALJ reduced the claimant's workers' compensation benefit to zero.

On review, the Panel affirmed.

Claimant contends that the City cannot take advantage of the offset under § 8–42–103(1)(d) because the City made no actual contributions to his pension for the years 1960 through 1978. We disagree.

Section 8–42–103(1)(d) provides that permanent partial disability benefits may be reduced "by an amount equal as nearly as practical to such employer pension or disability plan benefits," but the reduction is to be "only in an amount proportional to the employer's percentage of total contributions to the employer pension."

The purpose of the statutory offset is to prevent an injured worker from receiving duplicate benefits:

[W]here the employer, who has himself already paid the cost of workmen's compensation insurance, has also purchased, in whole or in part, a disability pension or annuity plan for his employee. The General Assembly was of the view that an injured employee should not be permitted to receive so-called 'double' disability benefits, *i.e.* both workmen's compensation benefits and [a] disability annuity at the expense of the employer.

*Myers v. Colorado,* 162 Colo. 435, 440–41, 428 P.2d 83, 86 (1967); *see also Industrial Commission v. Edlund,* 759 P.2d 7 (Colo.1988).

Claimant's argument that the offset is inapplicable because the City made no actual contributions to his pension during the years 1960–1978 is without merit. The evidence was undisputed that the City was required by statute to make, and did make, substantial amortized retroactive contributions to its pension plan since becoming affiliated with the Police and Fire Pension Association in 1981. Further, § 8–42–103(1)(d) imposes no restrictions on the time or manner of contribution, but rather, considers only the "employer's percentage of total contributions" to the pension.

The ALJ determined that the only practical method of calculating the City's contribution to claimant's pension was to estimate the total value of the pension over claimant's expected lifetime and then to deduct the claimant's direct contributions together with credit for interest on the claimant's contributions. The City presented evidence that this calculation was actuarially sound and was based on the methodology set forth in Internal Revenue Code § 411(c)(2).

We conclude that the ALJ's findings are supported by the record and applicable law. The ALJ was not required to calculate the offset with mathematical certainty, but only to make that offset "as nearly equal as practical" to the City's contributions. Section 8–42–103(1)(d).

Use of the word "practical" in this statute reflects that the General Assembly recognized that in some instances, such as here, it would not be feasible to calculate the employer's exact contribution to the claimant's pension. *See Bailey v. Lakewood Fire Protection District,* 44 Colo.App. 463, 618 P.2d 716 (1980).

We also find no merit in claimant's contention that his workers' compensation benefits have been "permanently suspended" thereby prejudicing him if the City "for some reason" is unable to fund his disability pension benefits over his expected lifetime.

We note, first, that this contention is purely speculative because there was no evidence that the City will be unable to fund the disability pension. Further, the offset under § 8–42–103(1)(d) is precisely that—an offset against pension benefits which are being "paid" to the employee. If, for some reason, the claimant's pension benefits are reduced or terminated and are no longer "payable" to the claimant, the offset under § 8–42–103(1)(d) will become inapplicable and claimant's weekly workers' compensation benefit will be restored to its pre-offset level of $84.

Order affirmed.

DAVIDSON and TAUBMAN, JJ., concur.